## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EDWIN BRYSON,                              )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        C.A. No. 22-1398-MN-LDH
                                          )
KILOLO KIJAKAZI, Acting                   )
Commissioner of Social Security,          )
                                          )
                Defendant.                )

### REPORT AND RECOMMENDATION

Plaintiff Edwin Bryson ("Mr. Bryson" or "Plaintiff") appeals from an unfavorable decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Mr. Bryson's application for disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. § 405(g).

Pending before the Court are cross-motions for summary judgment filed by Mr. Bryson and the Commissioner (D.I. 12, 16), which have been fully briefed (D.I. 13, 15, 18). Mr. Bryson asks that the Court direct that he be awarded benefits, or in the alternative, remand for further proceedings. The Commissioner opposes Mr. Bryson's motion and requests that the Court affirm the decision. For the following reasons, I recommend that Mr. Bryson's motion for summary judgment be GRANTED, that the Commissioner's cross-motion for summary judgment be DENIED, and that the case be remanded for further proceedings as described in this Report and Recommendation.

FILED

NOV 1 5 2023

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## I.    BACKGROUND

Mr. Bryson filed for disability insurance benefits and supplemental security income alleging a disability beginning on September 27, 2017. (D.I. 8 (hereinafter "Tr.") at 214–224). Mr. Bryson's claim was denied twice: initially on September 14, 2018 (Tr. at 102) and upon reconsideration on January 16, 2019 (Tr. at 103, 118).

Upon Mr. Bryson's request, an Administrative Law Judge ("ALJ") held a hearing at which Mr. Bryson testified and was represented by counsel. (Tr. at 31–64). On November 5, 2021, the ALJ issued a decision denying Mr. Bryson's request for benefits. (Tr. at 9–24). Mr. Bryson requested that the Social Security Administration's Appeals Council review the ALJ's decision. (Tr. at 211–213). On August 26, 2022, the Appeals Council denied Mr. Bryson's request for review. (Tr. at 1–4).

On October 25, 2022, Mr. Bryson filed a Complaint in this Court invoking his statutory right under 42 U.S.C. § 405(g) to judicial review of the ALJ's decision. (D.I. 2). Mr. Bryson moved for summary judgment, arguing that the Commissioner erred in finding him not disabled. (D.I. 12). The Commissioner opposed and cross-moved for summary judgment (D.I. 16), arguing that the ALJ's findings that Mr. Bryson was not disabled are supported by substantial evidence (D.I. 15).

## II.   LEGAL STANDARD

Courts review the Commissioner's factual findings for "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not

"re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014).

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted).

The analysis is identical whether an application seeks disability insurance benefits or

supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## III.  DISCUSSION

On appeal, Mr. Bryson argues that the ALJ's decision is not supported by substantial evidence because she did not consider Mr. Bryson's neuropathic limitations in rendering her severity findings and did not consider relevant evidence when fashioning her residual functional capacity assessment.

### A.  Whether the ALJ Erred in Rendering Her Severity Findings

According to Mr. Bryson, the ALJ erred by failing to address Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury in rendering her severity findings and their impact on Mr. Bryson's ability to work at steps two, three, and four of the five-step analysis. (D.I. 13 at 14–15; D.I. 18 at 3-5). I agree. The record shows that the ALJ did not address three of Mr. Bryson's confirmed diagnoses in rendering her severity findings. Without the ALJ's reasoned rejection of the diagnoses or evaluation of the cumulative effect these diagnoses throughout the five-step analysis, I cannot conclude that the ALJ's decision is supported by substantial evidence.

At step two, the ALJ considers whether a claimant's impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An ALJ may deem an impairment "not severe" only if it involves a "'slight abnormality'" that has "'no more than a minimal effect'" on the individual's ability to work. *McCrea*, 370 F.3d at 360 (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3). "An ALJ is required to

consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal citations omitted).

Here, the ALJ found at step two that Mr. Bryson suffered from severe impairments of obesity, rotator cuff impingement, degenerative joint disease, osteoarthritis of the right hip, labrum tear of the right hip, degenerative disc disease, tendinitis of the right knee (Tr. at 14–15), and non-severe impairments of hypertension, allergic rhinitis, obstructive sleep apnea, and adjustment disorder with depressed mood (Tr. at 15–16). Mr. Bryson presented the ALJ with medical records addressing his lumbar radiculopathy, neuropathy, and peroneal nerve injury, but the ALJ did not address whether those impairments were severe or non-severe, omitting any discussion as to whether they were medically determinable.

A summary of the record evidence of these impairments as presented to the ALJ follows. Mr. Bryson's treating primary care physician, Dr. Franklin Ampadu, diagnosed Mr. Bryson with "lumbar disc disease/radiculopathy," lumbosacral radiculopathy, neuropathy, and polyneuropathy in 2017 and 2018. (Tr. at 338, 558, 888, 989–93). In 2019, Dr. Ampadu noted that Mr. Bryson suffered from paresthesia of the hands (Tr. at 558, 1015-16) and experienced numbness in his feet. (Tr. at 989–93, 1015–16). The ALJ received evidence that Mr. Bryson complained of leg numbness and decreased sensation in his left foot (Tr. at 507, 516, 526, 530, 533, 535, 944). Indeed, the ALJ received evidence corroborating these diagnoses over a multiyear span from multiple providers:

- In 2017, Dr. Philip Kim diagnosed Mr. Bryson with lumbar radiculopathy. (Tr. at 970-72).

- In 2018, Mr. Bryson had a series of three injections to treat lumbar radicular syndrome (Tr. at 888, 890, 895, 954, 956) and participated in physical therapy for those symptoms (Tr. at 507–54, 565–67). He was seen at Christiana Care's Emergency

Department for low back pain (Tr. 449–501) and chest pain, low back pain and numbness in his feet and thighs. (Tr. at 647–51).

- In 2019, he had two more injections (Tr. at 810). He was seen by multiple providers from the Center for Interventional Pain and Spine, each of whom noted Mr. Bryson suffers from lumbar radiculopathy (Tr. at 881-82 (Maryum Rafique, D.O.), 814 (Bridget Gallaher, PA-C)). Additionally, Dr. Daniel Nasr noted that Mr. Bryson reported "numbness, tingling, muscle spasm[,] weakness and pin and needles." (Tr. at 876) as did Ms. Gallaher (Tr. 808). Mr. Bryson underwent EMG testing in which the findings were "suggestive of bilateral LS-S1 radiculopathies including findings suggestive of subacute denervation [,] . . . primarily motor peripheral neuropathy with axonal features [, and] . . . entrapment of the left peroneal motor nerve at the extensor retinaculum in the foot." (Tr. at 816). He was then diagnosed with an "injury of peroneal nerve at lower leg level, left leg" and was referred to physical therapy. (Tr. at 810). In late 2019, Mr. Bryson consulted with Total Health & Rehabilitation for physical therapy related to "chronic pain syndrome," "radiculopathy, lumbar region", "injury of peroneal nerve at lower leg level, left leg" and "neuropathy". (Tr. at 565–66).

- In 2020, providers at the Center for Interventional Pain and Spine again noted Mr. Bryson returned for treatment complaining of pain in his neck, shoulders, hands, lower back, hips and knees, and was again "[p]ositive for numbness, tingling, muscle spasms, weakness and pins/needles." (Tr. 716). Those records again state that he suffered an "injury of peroneal nerve at lower leg level, left leg" and radiculopathy in the lumbar and lumbosacral regions. (Tr. at 718). He was also seen at Christiana Care's Emergency Department after his legs gave out causing him to fall. (Tr. at 616–17). He began chiropractic treatment with Dr. Austin Becker late 2020 for his low back, neck and leg pain. (Tr. at 1449–54). He had additional injections in his back. (Tr. at 1574, 1588).

- In 2021, Mr. Bryson continued his chiropractic regimen, providers of which again noted Mr. Bryson's "[i]ntervertebral disc disorders with radiculopathy, lumbar region" (Tr. 1194-96, 1516). He reported to Dr. Becker an "insidious on set of pins and needles in his right foot, causing discomfort, patient mentions today the feeling in his foot is more prominent." (Tr. at 1196-1373). He had additional injections in his back. (Tr. at 1514, 1529, 1543, 1562). A 2021 Disability Work Assessment/Physical Capacities evaluation performed by Dr. Chee Woo noted "confirmed L5-S1 radiculopathies including findings suggestive of subacute denervation or primarily motor peripheral neuropathy and/or

entrapment of left peroneal motor nerve at the extensor retinaculum." (Tr. 1066). He noted that Mr. Bryson exhibited "mild signs of instability" and found him to be a high fall risk. (Tr. 1070-71).

At the hearing, Mr. Bryson testified as to his low back pain, numbness in hands and feet, and issues related to balance:

> Q: So I want to now talk a little bit in more detail about each of the impairments that you have. And so, the first, obviously, let's talk about your back. Describe for me the symptoms that you have been dealing with because of the low back problem.
> A: The symptoms about – I'm not able to sit long. I'm not able to walk a long distance. I'm not able to stand long.
> Q: And where would you place your pain level, when it comes to your back pain?
> A: A ten.
> Q: And is that with or without medicine?
> A; Both.
> Q: And you've tried various medications for your condition?
> A: Yes.
> . . .
> Q: And you've also tried physical therapy for your back?
> A: Yes.
> . . .
> Q: Okay. Now I want to talk about – you mentioned about your legs. Talk to me about the lower extremity problems you have, that you deal with.
> A: I deal with the shooting pain, numbness in the foot. You know, cramps.
> Q: And how often do you experience those symptoms?
> A: Daily.
> Q: Have you ever had any balance problems or stability problems because of the leg issue?
> A: Yes.
> Q: Tell me just a little bit about that.
> A: My balance problem like if I'm putting my pants on, I'm off balance. I fell a few times. I fell down my sister's step back in January, due to my legs giving out on me. I actually had a balance problem the other day at therapy.
> Q: Now, you've had testing done for your legs, and what have the doctors explained to you? What's the situation with your legs?
> A: I did have a balance test done. We are working on that in therapy.
> Q: Uh-huh.

7

A: But he didn't go into, you know, details, what we're going to work on.

Q: Did you have any testing done like on the nerves in your toes, or on the muscles related to your legs? Any type of testing that they did to that? Any EMGs or MRIs done?

A: I had a MRI. No, I'm sorry. I was getting – I'm sorry, guys. I was getting confused. EMG.

Q: Okay.

A: But I had that done in like 2019.

Q: Okay. And what did the doctors explain to you about that?

A: Just a trapped nerve in the left foot.

Q: And have – has that remained the same, that symptom?

A: Yes.

. . .

Q: [D]o you have any issues with your hands? Any numbness or tingling?

A: Yes. Numb – excuse me, guys. Numbness and tingling in both hands.

Q: Does – how often do you have that symptom?

A: That's daily.

Q: Does it affect what you're able to do with your hands?

A: Sometimes.

Q: And in those times that you – what is it precisely? Like what can activate it?

A: Like driving. Holding – even holding a cup of soda, a glass of soda.

Q: Uh-huh.

A: Just either – I can't put my hands in my pocket. You know?

(Tr. at 44–48).

"An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford*, 399 F.3d at 552 (internal quotation marks omitted). Despite receiving evidence of Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury, the ALJ did not address at all whether these injuries were severe or not severe impairments. *Id.* As a result, I cannot determine whether the ALJ considered these impairments nor say that substantial evidence supports her findings because these impairments are not referenced in her step two analysis. This is error. *See Kirk v. Saul*, C.A. No. 20-245-LPS, 2021 WL 2823122, at *2–3 (D. Del. July 7, 2021) (concluding that ALJ's lack of explanation for not

considering impairments or making severity findings constituted non-harmless error at step two); *Scott v. Saul*, C.A. No. 17-1659-MEM, 2019 WL 3817508, at *5 (D. Del. Aug. 14, 2019) ("At step two in the disability determination process, the ALJ failed to discuss Scott's generalized anxiety disorder. . . Considering the records indicating that Scott has generalized anxiety disorder were part of the record, which was readily available to the ALJ, he should have considered this impairment and indicated such in his decision.").[1]

The Commissioner maintains that, under *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140 (3d Cir. 2007) and *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260 (3d Cir. 2006), any error was harmless because the ALJ did not deny Mr. Bryson's claim at step two. (D.I. 15 at 11) ("so long as a claim is not denied at step two, it is not necessary for the ALJ to have specifically found any additional alleged impairment to be severe."). Although the Third Circuit has found harmless error when an ALJ held certain impairments non-severe at step two but nevertheless decided in a claimant's favor, *Salles*, 229 F. App'x at 145; *Rivera*, 164 F. App'x at 261, that is not what happened in this case. Here, there is no evidence that the ALJ considered Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury in rendering her severity findings. Indeed, the ALJ made no severity finding whatsoever—neither severe nor non-severe—with respect to Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury. For this reason, *Salles* and *Rivera* are of no help to the Commissioner here. By not evaluating those impairments, the ALJ "necessarily did not consider whether these were severe impairments that alone, or in conjunction with other of [My Bryson's] impairments, rendered him disabled." *Neely v. Kijakazi*, C.A. No. 20-1551-CJB, 2022 WL 9987520, at *12 n. 11 (D. Del. Oct. 17, 2022) (concluding ALJ erred by not considering at step two whether plaintiff's insomnia and anxiety

---

[1]     Although Mr. Bryson cites to both *Kirk* and *Scott* in his Opening Brief (D.I. 13 at 17 n.4), the Commissioner does not address them.

disorder amount to severe impairments). "It is possible, for example, that these impairments could have been deemed severe, and that related limitations could have resulted in a step four RFC determination that would ultimately lead to a disability determination at step five." *Id.* Put more simply, it is not the ALJ's failure to deem Mr. Bryon's ailments as severe in step two that results in error; it is her failure to consider the ailments at all, without explanation. "The ALJ made no mention of this diagnosis. The ALJ cannot reject the opinions of treating physicians without, at a minimum, giving some explanation for doing so." *Woodson v. Saul*, C.A. No. 18-1928-RGA, 2020 WL 1506281, at *2 (D. Del. Mar. 30, 2020). Even if the impairments were found to be non-severe, they may have imposed additional restrictions on Mr. Bryson's ability to work when considered as part of a cumulative effect. *Id.* Thus, I agree with Mr. Bryson that the ALJ's step two analysis was deficient.

Issues with the step two analysis spill over to the ALJ's assessment at step three. At step three, the ALJ must consider the medical severity of the claimant's impairment(s) and whether the impairment(s) "meets or equals one of the impairments in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008) (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Here, the ALJ considered Mr. Bryson's "degenerative disc disease, degenerative joint disease, rotator cuff impingement, osteoarthritis of the right hip, labrum tear of the right hip, or tendinitis of the right knee" to conclude that they do not meet the requirements of Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or Listing 1.18 (abnormality of a major joint(s) in any extremity)." (Tr. at 16). As Mr. Bryson explains (D.I. 13 at 14) and the Commissioner concedes (D.I. 15 at 13-14), the ALJ did not evaluate any impairments pursuant to Listing 11.14 (peripheral neuropathy). 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.14. "Considering the

records indicating that [Mr. Bryson] has [lumbar radiculopathy, neuropathy and peroneal nerve injury] were part of the record, which were readily available to the ALJ, [s]he should have considered this impairment and indicated such in [her] decision." *Kirk*, 2021 WL 2823122, at *3 (quoting *Scott*, 2019 WL 3817508, at *5). Although the Commissioner contends that any error arising from the ALJ's failure to analyze Listing 11.14 was "harmless because as the ALJ explained, Plaintiff did not have serious limitations in mobility, gross motor functioning, or fine motor functioning, and Plaintiff points to no evidence that compels a different result," the ALJ's error cannot be deemed "harmless" if it operated to Mr. Bryson's detriment, as it did here.  (D.I. 15 at 14) (emphasis omitted).  Moreover, while the ALJ stated that she "carefully considered the specific requirements of the relevant listings" (Tr. 16), "this blanket statement is insufficient, in context, to permit meaningful appellate review." *Kirk*, 2021 WL 2823122, at *2 (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  Thus, I agree with Mr. Bryson that the ALJ's step three analysis was deficient.

These step two and step three errors were not ameliorated by the ALJ's assessment of Mr. Bryson's residual functional capacity ("RFC").  At step four, the Commissioner determines whether the claimant retains the RFC to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv) (stating that a claimant is not disabled if he or she is able to return to past relevant work); 20 C.F.R. § 416.920(a)(4)(iv) (same); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008) (internal quotation marks and citation omitted).  Even if I were to accept the Commissioner's position that "the ALJ specifically addressed Plaintiff's radiculopathy, neuropathy, and symptoms related to his peroneal nerve injury under Plaintiff's degenerative

disc disease in the RFC discussion," (D.I. 15 at 11),[2] the Commissioner necessarily concedes that the pertinent evidence was *only* referenced in connection with degenerative disc disease—and not lumbar radiculopathy, neuropathy, and peroneal nerve injury. I do not understand degenerative disc disease, on the one hand, and lumbar radiculopathy, neuropathy, and peroneal nerve injury, on the other, to mean the same thing. Neither can I glean from the ALJ's discussion that she inferentially found Plaintiff's limitations not credible for specific reasons. As a result of these omissions, I cannot meaningfully review the ALJ's conclusion that "the claimant is limited by the combined effects of his impairments, but not to the degree alleged" (Tr. at 35). *See Kirk*, 2021 WL 2823122, at *3; *Cotter*, 642 F.2d at 704 (stating ALJ's finding of RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests").

Thus, in failing to address Mr. Bryson's ailments and failing to address the cumulative effect of Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury throughout the five-step analysis, the ALJ's decision is not supported by substantial evidence. *Kirk*, 2021 WL 2823122, at *2; *Scott*, 2019 WL 3817508, at *5; *Neely*, 2022 WL 9987520, at *12; *Woodson*, 2020 WL 1506281, at *2 ("In failing to consider and address all of Plaintiff's mental impairments, the ALJ's decision, as it is currently written, is not supported by substantial evidence."). Accordingly, I recommend that the case be remanded the ALJ so that she can make a sufficient record as to whether or not Mr. Bryson's lumbar radiculopathy, neuropathy, and peroneal nerve injury amount to severe or not severe impairments at step two, whether those impairments alone or in combination satisfy a listed impairment, including Listing 11.14, at step

---

[2]     The ALJ's references Mr. Bryson's "2019 EMG of the lower extremities suggested bilateral L5-S1 radiculopathies and findings suggestive of subacute denervation and peripheral neuropathy with axonal features" (Tr. at 18) but does not connect those findings with degenerative disc disease or any other ailment.

three, and if so, what impact those impairments have on his RFC at step four, and, ultimately, his entitlement to benefits.[3]

### B. Whether the ALJ Considered Relevant Evidence in Rendering Her RFC Determination

Mr. Bryson argues that the ALJ failed to consider relevant evidence related to Mr. Bryson's medical history, including records related to "repeated epidural injections, chiropractic treatment, physical therapy findings and the records of Dr. Ampadu" when concluding that Mr. Bryson had the RFC to perform sedentary work with restrictions. (D.I. 13 at 17). Mr. Bryson also contends that the ALJ erred in failing to consider Mr. Bryson's ability to sustain work on a regular and ongoing basis. (*Id.* at 17).

Because I have recommended that the case be remanded to the ALJ so that she can make a sufficient record with respect to, *inter alia*, her RFC determination, *see supra*, Mr. Bryson's additional claims of error may be remedied through the case's treatment on remand. "A remand may produce different results on these claims, making discussion of them moot." *Brown v. Saul*, C.A. No. 18-1619-MEM-GBC, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020); *accord Marilyn*

---

[3]     Although Mr. Bryson requests an award of benefits (D.I. 13 at 20), "a court may reverse an ALJ's decision and grant disability benefits when the record has been fully developed, all essential factual issues have been resolved, and the record adequately establishes a claimant's entitlement to benefits." *Parker v. Kijakazi*, C.A. No. 22-384-GBW-CJB, 2023 WL 4865530, at *16 n.15 (D. Del. July 31, 2023) (citing *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)) Here, although the record is substantial, the ALJ may be able to sufficiently explain why no finding of disability is appropriate. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

*G.D. v. Comm'r of Soc. Sec.*, C.A. No. 21-00494-KM, 2022 WL 855684, at *8 (D.N.J. Mar. 22, 2022); *LaSalle v. Comm'r of Soc. Sec.*, C.A. No. 10-1096-DWA, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011); *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 364 (E.D. Pa. 2018). Accordingly, I decline to address them further.

## IV.   CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment (D.I. 12) be GRANTED, that the Commissioner's cross-motion (D.I. 16) be DENIED, and that this matter be remanded back to the Commissioner of the Social Security Administration for further proceedings consistent with this recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated:  November 15, 2023

Hon. Laura D. Hatcher
United States Magistrate Judge